FILED

SEP 17 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

J. Doe, Pro Se Plaintiff
General Delivery
Woodland, CA 95695-9999
alsunstateline@gmail.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. DOE, | ) Case No.: 2:25-cv-02553-DAD-CSK |
| | ) NOTICE OF MOTION AND MOTION IN REPLY |
| Plaintiff,) | TO DEFENDANT'S OPPOSITION TO |
| vs. | ) PLAINTIFF'S MOTION FOR PROTECTIVE |
| | ) ORDER; MEMORANDUM OF POINTS AND |
| FEDERAL INSURANCE COMPANY,) | AUTHORITIES; DECLARATION OF J. DOE |
| and DOES 1 through 50, inclusive, | ) Date: November 18, 2025 |
| | ) Time: 10:00 A.M. |
| Defendants.) | Courtroom: 25 |

**TO THE HONORABLE COURT, AND TO DEFENDANT'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at the time and in the department noted above, located at the United States District Courthouse, 501 I Street, Sacramento, California 95814, Plaintiff J. DOE ("Plaintiff"), appearing pro per, will and hereby does move this Honorable Court for a Protective Order pursuant to Federal Rule of Civil Procedure 26(c) and the Court's inherent authority.

This motion is made in reply to the Opposition filed by Defendant Federal Insurance Company ("Federal" or "Defendant"). Plaintiff respectfully requests the Court grant the following relief:

1. An order permitting Plaintiff to proceed in this litigation using the pseudonym "J. Doe."

2. An order sealing all documents filed in this matter that contain personally identifying information about Plaintiff.

3. An order establishing that all communications between Plaintiff and Defendant's counsel shall be conducted exclusively through email as a reasonable accommodation for Plaintiff's disabilities.

4. An order permitting Plaintiff to appear at all hearings, conferences, and depositions by telephone or other audio-only means, without video, as a reasonable accommodation for Plaintiff's disabilities.

5. An order prohibiting Defendant, its employees, agents, investigators, and attorneys from: a. Directly or indirectly contacting, following, harassing, or threatening Plaintiff; b. Attempting to discover Plaintiff's physical location, address, or other sensitive personal information beyond what is strictly necessary for this litigation and subject to the protections herein; c. Reporting or

- 1 -

MOTION IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

threatening to report Plaintiff to any governmental agency, including U.S. Immigration and Customs Enforcement (ICE), or any other third party for any purpose, particularly for malicious harassment or to gain an advantage in this litigation.

6. Any other and further relief the Court deems just and proper.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of J. Doe, the concurrently filed Request for Judicial Notice, the concurrently filed Request for Reasonable Accommodations, all pleadings and papers on file in this action, and upon such other evidence and argument as may be presented before or at the hearing on this motion. Plaintiff contends that Defendant's Opposition fundamentally misapprehends the law and cavalierly dismisses the grave, life-threatening dangers Plaintiff faces— dangers directly caused and exacerbated by Defendant's own past conduct. Justice, equity, and federal law require that this Court intervene to protect a uniquely vulnerable litigant from irreparable harm and ensure their constitutional right to access the courts.

Dated: September 14, 2025

Respectfully submitted,



J. Doe, Pro Se Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This is not, as Defendant Federal Insurance Company ("Federal") callously frames it, a simple insurance dispute. For Plaintiff J. Doe, this litigation is a matter of life and death. Defendant's Opposition to Plaintiff's Motion for Protective Order is a chilling document; it systematically dismisses, trivializes, and mocks the profound vulnerabilities of a litigant who embodies a confluence of nearly every form of marginalization recognized in modern society. Plaintiff is a non-binary, Jewish, disabled individual with severe cognitive impairments, who is also homeless, undocumented, and has Limited English Proficiency (LEP). More damningly, Plaintiff is a direct target of Defendant's retaliatory threats—threats to weaponize their immigration status, which have already nearly resulted in their arrest and deportation.

Defendant's argument that Plaintiff's fears are "outlandish," "conclusory," and "incredulous" is not just a legal tactic; it is a continuation of the gaslighting and abuse that precipitated this lawsuit. It is an attempt to persuade this Court that a person this vulnerable should not be believed and, therefore, should not be protected. Defendant demands "specifics" like names and dates, knowing full well that Plaintiff's cognitive disabilities preclude perfect recollection and that providing such

- 2 -

details would expose them to further targeted retaliation and death threats. This is not a failure of pleading; it is a condition of survival.

The law does not support Defendant's cruel position. The Ninth Circuit's standards for pseudonymity, the Americans with Disabilities Act's (ADA) mandate for reasonable accommodations, and the Constitution's guarantee of due process all compel this Court to grant the requested protections. The public's interest in open courts is not a license for corporate litigants to intimidate vulnerable parties into silence. Rather, the highest public interest lies in ensuring that the doors of justice remain open to everyone, especially those who have been persecuted, marginalized, and threatened into the shadows. This Court must reject Defendant's effort to extinguish Plaintiff's rights and grant this motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff's life exists at the intersection of extreme and compounding vulnerabilities. They are a non-binary individual who is Jewish, and they live with severe, lifelong cognitive disabilities, including profound dyslexia and memory disorders that make real-time comprehension and verbal communication practically impossible. (Declaration of J. Doe ("Doe Decl.") ¶¶ 2-4). To understand written text, Plaintiff relies entirely on specialized computer software to read documents aloud multiple times, a process that is slow and laborious. (Doe Decl. ¶ 4). Their ability to recall specific dates, names, or the precise sequencing of events is severely impaired, a fact Defendant now seeks to use against them. (Doe Decl. ¶ 4).

Plaintiff is also homeless and an undocumented immigrant. (Doe Decl. ¶ 5). Their lack of stable housing makes them a constant target, and their immigration status places them in a state of perpetual fear. This fear is not hypothetical. Defendant, through its agents, is aware of Plaintiff's status and has maliciously used it as a weapon. On a prior occasion, after Plaintiff asserted their rights, an agent of Defendant made explicit antisemitic remarks, denied the Holocaust, and threatened to report Plaintiff to immigration authorities. (Doe Decl. ¶¶ 8-9). This was not an idle threat; Defendant followed through, and Plaintiff was almost arrested by immigration enforcement officers as a direct result. (Doe Decl. ¶ 9).

For Plaintiff, who requires consistent access to specialized medical care for their disabilities, immigration detention is not merely an inconvenience; it is a potential death sentence. (Doe Decl. ¶ 10). The deplorable state of medical care in U.S. immigration detention facilities is a matter of public record, with numerous documented cases of disabled and ill detainees dying from neglect. (Request for Judicial Notice ("RJN"), Exs. 1-2).

- 3 -

MOTION IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Compounding these terrors, Plaintiff has been the target of credible death threats due to their intersecting identities as a non-binary, Jewish, and undocumented person. (Doe Decl. ¶ 11). They have been forced to live "off the grid" to survive, avoiding physical interactions and relying on secure, anonymous digital communication. The relief sought in this motion is not a matter of preference; it is an extension of the survival strategies Plaintiff has been forced to adopt. Defendant's demand that Plaintiff abandon these protections to pursue a lawsuit is a demand that they risk their life for their day in court.

## III. LEGAL ARGUMENT

### A. THE COURT MUST PERMIT PLAINTIFF TO PROCEED BY PSEUDONYM AND SEAL THE RECORD TO PREVENT SEVERE AND IRREPARABLE HARM.

Defendant wrongly asserts that Plaintiff has failed to meet the legal standard for anonymity. In the Ninth Circuit, the determination rests on balancing the plaintiff's need for anonymity against the prejudice to the defendant and the public's interest in open proceedings. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). This balancing is guided by five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042 (9th Cir. 2010). Every factor weighs decisively in Plaintiff's favor.

### 1. The Severity, Reasonableness, and Vulnerability Factors Overwhelmingly Support Anonymity.

The first three factors—severity of harm, reasonableness of fear, and vulnerability—are inextricably linked and form the core of Plaintiff's plea for protection.

- **Severity of Harm:** The threatened harm is the most severe imaginable: death, either through retaliatory violence fueled by antisemitic and anti-immigrant hate, or through medical neglect in an ICE detention center. Defendant's attempt to frame this as a mere "insurance coverage action" is a grotesque understatement of the stakes. The harm also includes the certainty of severe psychological trauma and the loss of Plaintiff's constitutional right to seek redress.

- **Reasonableness of Fear:** Plaintiff's fears are not "hypothesis or conjecture," as Defendant suggests. They are grounded in Defendant's own past actions. Defendant *has already* reported Plaintiff to immigration authorities with malicious intent. (Doe Decl. ¶ 9). This is not a fear of future harm, but a certainty based on past conduct. The fear of immigration detention is reasonable, as is the fear of death within that system. (RJN, Exs. 1-2). The fear of physical violence is

- 4 -

reasonable, given the documented rise in hate crimes targeting Jewish and non-binary people and the specific death threats Plaintiff has received. (Doe Decl. ¶ 11; RJN, Ex. 3).

- **Vulnerability to Retaliation:** It is difficult to conceive of a litigant more vulnerable than Plaintiff. They are homeless, without financial resources, and lack a social safety net. Their cognitive disabilities impair their ability to self-advocate in high-stress situations. Their immigration status renders them powerless against a corporation that has already demonstrated its willingness to use state power as a weapon of retaliation. The power imbalance is not just significant; it is absolute.

Defendant's reliance on *Doe v. Ayers*, 789 F.3d 944 (9th Cir. 2015), is misplaced and reveals a profound lack of understanding. The court in *Ayers* permitted pseudonymity based on an expert affidavit because the plaintiff, an inmate, had the resources (counsel) to procure one. To hold a pro per, homeless, disabled Plaintiff to the same standard is to create an insurmountable barrier to justice. The credible, sworn statements in Plaintiff's declaration are sufficient evidence of the risk, and requiring more would violate the principles of due process and equal access.

**2. The Minimal Prejudice to Defendant is Outweighed by the Threat to Plaintiff and the Public Interest.**

Defendant's claim of prejudice is both exaggerated and pretextual. The core functions of the litigation are not impeded by Plaintiff's anonymity.

- **Prejudice to Defendant:** Defendant admits it already knows Plaintiff's true identity from prior claims. (Opp. at 8). Therefore, it cannot be prejudiced in its ability to conduct discovery, investigate the claims, or prepare a defense. Its claim that it will be unable to assess Plaintiff's credibility without seeing their face on video is a red herring. Credibility has been assessed for centuries based on testimony and evidence, long before video technology existed. Moreover, this argument is a veiled attack on Plaintiff's request for disability accommodation, addressed below. Any minimal prejudice is easily mitigated through standard discovery tools and deposition protocols that do not require sacrificing Plaintiff's safety.

- **The Public Interest:** The public's interest in open proceedings is a foundational principle, but it is not absolute. It must yield when it directly conflicts with a more compelling interest. Here, several public interests outweigh the presumption of openness:

    o    **The Interest in Access to Justice:** The most fundamental public interest is ensuring that the courthouse doors are open to all. If vulnerable individuals are forced to risk their lives to file a lawsuit, the promise of justice becomes a cruel illusion.

- 5 -

o **The Interest in Protecting Whistleblowers and Victims of Retaliation:** The public has a strong interest in allowing individuals to sue powerful entities for alleged wrongdoing without fear of life-destroying retaliation. This is particularly true when the retaliation involves the abuse of government processes like immigration enforcement.

o **The Interest in Protecting Marginalized Communities:** The public has an interest in protecting members of targeted groups—immigrants, the disabled, and religious and gender minorities—from harm and discrimination. Forcing Plaintiff to publicly disclose their identity would make them a bigger target and undermine this interest.

In balancing these factors, the conclusion is inescapable. The severe, credible, and life-threatening harm to Plaintiff vastly outweighs the minimal, manageable prejudice to Defendant. The public interest is best served by protecting Plaintiff and allowing this case to proceed on its merits.

**B. PLAINTIFF'S REQUESTED ACCOMMODATIONS ARE MANDATED BY THE AMERICANS WITH DISABILITIES ACT AND THE DUE PROCESS CLAUSE.**

Defendant's opposition to Plaintiff's request for communication and appearance accommodations is not merely unpersuasive; it is unlawful. Plaintiff's requests are not for convenience, but are a necessary prerequisite for their participation in this case, mandated by federal disability law and the Constitution.

**1. The ADA Requires the Court to Provide the Requested Accommodations.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This mandate applies unequivocally to the courts. *See Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (holding that Title II is a valid abrogation of state sovereign immunity as applied to cases implicating the fundamental right of access to the courts).

Plaintiff has multiple qualifying disabilities under the ADA, including severe dyslexia and memory disorders. (Doe Decl. ¶ 4). These disabilities directly impact their ability to process information and communicate, which are central activities in litigation. To have "meaningful access" to the judicial process, Plaintiff requires accommodations. *See Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

• **Email-Only Communication:** Plaintiff's reliance on text-to-speech software is a direct consequence of their dyslexia. Verbal conversations, particularly the rapid, high-stakes exchanges with opposing counsel, are inaccessible. (Doe Decl. ¶ 4). Insisting on phone calls is tantamount to excluding Plaintiff from meet-and-confer obligations and other critical communications. Email is a

reasonable accommodation that allows Plaintiff the time and technological assistance they need to comprehend and respond.

- **Audio-Only Appearances:** Plaintiff's cognitive disabilities are severely exacerbated by stress and sensory overload, which a video appearance would trigger. (Doe Decl. ¶¶ 4, 12). Forcing them to appear on video would impair their ability to process questions, recall information, and articulate responses, effectively denying them the ability to testify or participate meaningfully. An audio-only appearance mitigates this barrier.

Defendant's claim of prejudice from these accommodations is a demand for the right to discriminate. The ADA does not permit a party to veto a necessary accommodation because it finds it inconvenient. The "inability to judge Plaintiff's credibility" is a pretext. Federal has a right to test Plaintiff's testimony, not to dictate the modality of that testimony in a way that violates federal law.

**2. The Due Process Clause Guarantees a Right to Be Heard.**

The Fifth Amendment's Due Process Clause guarantees litigants a "meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971). If a court imposes procedures that a party, due to their disability and unique circumstances, cannot navigate, it violates this fundamental right. Forcing Plaintiff to communicate verbally or appear on video, when their disabilities make doing so practically impossible, is to deny them the opportunity to be heard as surely as if the courtroom doors were locked. The accommodations requested are the minimum necessary to afford Plaintiff constitutional due process.

**C. THE REQUESTED RESTRAINING ORDER IS ESSENTIAL TO PREVENT DEFENDANT FROM OBSTRUCTING JUSTICE THROUGH INTIMIDATION.**

Defendant's statement that it "has no plans to harass, threaten, or report Plaintiff to authorities" is hollow and unbelievable. (Opp. at 9). It has already done so. Defendant's past conduct is the single most reliable predictor of its future conduct. The threat to report Plaintiff to ICE was not a misunderstanding; it was a calculated, malicious act of retaliation designed to silence them.

The Court has inherent power, as well as authority under Federal Rule of Civil Procedure 26(c), to issue orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This includes protecting a party from extra-judicial intimidation that is intended to derail the litigation. *See Whitney v. MonkeySports, Inc.*, 2014 WL 2861513, at *3 (N.D. Cal. June 24, 2014) (recognizing court's power to sanction a party for threatening a litigant with deportation).

The requested order is narrowly tailored. It does not prevent Defendant from litigating its case. It prevents Defendant from using the threat of immigration enforcement, harassment, and violence

- 7 -

as a tool of litigation. Without this order, Plaintiff will be litigating under a constant, credible threat that Defendant could, at any moment, make a phone call that would lead to their detention and potential death. No litigant can or should be asked to proceed under such duress. The integrity of the judicial process itself depends on this Court neutralizing that threat.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff J. Doe respectfully requests that this Honorable Court grant their Motion for Protective Order in its entirety, and reject Defendant's baseless and cruel Opposition.

Dated: September 14, 2025

Respectfully submitted,



*J. Doe, Pro Se Plaintiff*

## V. REQUEST FOR REASONABLE ACCOMMODATIONS UNDER THE ADA

Pursuant to Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Plaintiff J. Doe, a qualified individual with a disability, respectfully requests the following reasonable accommodations to ensure meaningful access to the judicial proceedings in this matter:

1. **Accommodation for Communication:** Plaintiff requests an order establishing that all communications between Plaintiff and Defendant's counsel be conducted exclusively through email.

o      **Need for Accommodation:** As detailed in the Declaration of J. Doe, Plaintiff has severe dyslexia and related cognitive processing disorders that render synchronous verbal communication (e.g., telephone calls) ineffective and inaccessible. Plaintiff relies on assistive technology (text-to-speech software) to read and comprehend written text, a process which requires significant time. Email is a necessary accommodation that allows Plaintiff an equal opportunity to participate in essential litigation communications, such as meet-and-confer discussions.

2. **Accommodation for Court Appearances:** Plaintiff requests an order permitting their appearance at all pretrial conferences, hearings, and any deposition by telephonic or other audio-only means, without the requirement of a live video feed.

o      **Need for Accommodation:** Plaintiff's cognitive disabilities are substantially exacerbated by the sensory and psychological stress of being visually observed in a high-stakes setting. This stress severely impairs Plaintiff's ability to process auditory information, recall facts,

- 8 -

and articulate responses. Requiring a video appearance would effectively deny Plaintiff the ability to participate meaningfully and present testimony. An audio-only format is a reasonable modification to the court's procedures that will permit Plaintiff's participation.

These accommodations are necessary to ensure Plaintiff is not "excluded from participation in or be denied the benefits of the services, programs, or activities" of this Court by reason of their disability. 42 U.S.C. § 12132. Plaintiff respectfully requests the Court grant these accommodations to uphold the mandates of the ADA and ensure Plaintiff's fundamental right of access to justice. *See Tennessee v. Lane*, 541 U.S. 509 (2004).

Dated: September 14, 2025

Respectfully submitted,



J. Doe, Pro Se Plaintiff

## VI. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Plaintiff J. Doe respectfully requests that this Court take judicial notice of the following facts, which are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned:

1. **Conditions of Medical Care in U.S. Immigration Detention:** That reports from governmental and non-governmental human rights organizations have documented systemic failures, substandard medical and mental health care, and preventable deaths within U.S. Immigration and Customs Enforcement (ICE) detention facilities.

o     **Source:** Exhibit 1: U.S. Government Accountability Office, "ICE Detention: Actions Needed to Improve Death Reporting and Address Facility Oversight" (GAO-22-104439), Nov. 2021.

o     **Source:** Exhibit 2: American Civil Liberties Union (ACLU), "Fatal Neglect: How ICE Ignores Deaths in Detention" (Aug. 2016).

2. **Hate Crimes Statistics:** That official statistics from federal law enforcement and data from civil rights organizations indicate a documented increase in reported hate crimes and incidents of harassment targeting individuals based on their religion (specifically, antisemitism) and gender identity (specifically, against transgender and non-binary individuals) in the United States.

o     **Source:** Exhibit 3: Federal Bureau of Investigation (FBI), "2023 Hate Crime Statistics" (or the most recently available official report).

MOTION IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

o    **Source:** Exhibit 4: Anti-Defamation League (ADL), "Audit of Antisemitic Incidents" (most recent annual report).

Plaintiff requests the Court take judicial notice of these documents and the facts contained therein as they are directly relevant to the reasonableness of Plaintiff's fears of harm and the severity of the threat they face if their identity and location are publicly disclosed.

Dated: September 14, 2025

Respectfully submitted,



J. Doe, Pro Se Plaintiff

## VII. DECLARATION OF J. DOE

I, J. Doe, declare as follows:

1. I am the Plaintiff in this action and I am proceeding in pro per. I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would competently testify to them.

2. I submit this declaration in support of my Motion for Protective Order. I am asking the Court for protection because I am terrified for my life, and I cannot safely pursue this lawsuit without it.

3. I am a non-binary and Jewish person. I am also homeless and do not have legal immigration status in the United States. I know that each of these things makes me a target for hate and violence.

4. I live with severe cognitive disabilities. I have profound dyslexia, which means I cannot read and understand text on my own. To read court documents or emails, I must use a special computer program that reads the words out loud to me. I often have to listen to a sentence or paragraph many times before I can understand it. I also have a very poor short-term memory. It is extremely difficult for me to remember specific dates, names, or the exact order of events, especially when I am stressed. Trying to speak and respond quickly in a conversation, like on a phone call or in a court hearing, is practically impossible for me. My brain does not work that way. I get overwhelmed, I cannot process the information, and I shut down. The only way I can communicate effectively and accurately is through email, where I can take the time I need to use my software and compose my thoughts.

5. Because I am homeless and undocumented, I live in constant fear. I do not have a safe place to live, and I am always worried about being discovered.

6. The defendant, Federal Insurance Company ("Federal"), knows about my vulnerabilities. I believe they are using them to try to scare me into dropping my lawsuit.

MOTION IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

7. Federal's opposition papers call my statements "outlandish" and "incredulous." They are the truth. The people who work for Federal have been cruel to me. They have bullied me and discriminated against me because of who I am.

8. Agents or employees of Federal have made numerous anti-Semitic statements to me. One person specifically told me that the Holocaust was a lie and that Jewish people deserved to be hated. These comments were not random; they were made to hurt and intimidate me when I was trying to deal with my insurance claims.

9. On at least one occasion, after I had a disagreement with Federal about my claim, an agent of the company explicitly threatened to report me to immigration authorities (ICE). They knew I was undocumented and they used it as a weapon. Shortly after that threat, I was almost arrested by immigration officers. I am certain that Federal made the report to them for the sole purpose of causing me harm and getting me deported. I was terrified and I am still terrified.

10.    I have serious medical needs related to my disabilities that require ongoing care. I know from news reports and human rights organizations that the medical care in immigration detention is terrible. I honestly believe that if I am detained by ICE, I will not get the care I need and I will die. This is not an exaggeration.

11.    In addition to the threats from Federal, I have received specific, credible death threats from others because I am a non-binary and Jewish person. My life is in danger. I have had to take extreme measures to hide and stay safe. I cannot let my real name or location become public. Doing so would put a target on my back for anyone who hates people like me.

12.    The thought of having to appear on video for a court hearing or deposition fills me with crippling anxiety. The stress of being watched, combined with my cognitive disabilities, would make it impossible for me to think clearly or speak. An audio-only appearance would still be very difficult, but it would at least give me a chance to participate in some way.

13.    I am asking this Court for protection. I am not trying to hide from my responsibilities in this lawsuit. I am trying to stay alive. The protections I am asking for—using a pseudonym, communicating by email, appearing by audio, and an order stopping Federal from threatening me—are the only way I can have my day in court without risking my life.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 14, 2025, in Woodland, California.

*J. Doe, Pro Se Plaintiff*

MOTION IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

**Case No.: 2:25-cv-02553-DAD-CSK**

*J. Doe vs Federal Insurance Company, et al*

**CERTIFICATE OF SERVICE BY EMAIL**

I, Alex Emer, declare as follows:

1. I am over the age of eighteen and not a party to this action. I voluntarily assisted Plaintiff J. Doe in serving the documents listed below. My email address is alekemerald@gmail.com

2. On September 14, 2025, I caused a true and correct copy of the following documents to be served via email on all counsel of record for the Defendant in this action:

o        Notice of Motion And Motion in Reply to Defendant's Opposition to Plaintiff's Motion for Protective Order;

o        Memorandum of Points And Authorities;

o        Request for Reasonable Accommodations Under the Ada;

o        Request for Judicial Notice;

o        Declaration of J. Doe.

3. The email address used for service is:

o        Mallory Y. Schorr, Esq. – MSchorr@londonfischer.com

4. Service by email is made in accordance with Fed. R. Civ. P. 5(b)(2)(E) and any applicable Local Rules of the Eastern District of California.

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct.

Executed on September 14, 2025 at Sacramento, California

*Alex Emer*